Good morning. If it pleases the Court, I'm Robert Mann, and this morning I represent all of the appellants, that is, the heirs of Lloyd Brewer and Jason Rowden and Ernest Dabbs, and also the one survivor, Denorvius Pickett. The Court asked that I look at the Supreme Court's decision in Briseau v. Haugen and address how that case might apply here. I don't think it has any application. In Briseau, the situation that the officer confronted was whether to shoot a disturbed felon set on avoiding capture through vehicular flight when persons in the immediate area are at risk from that flight. Here, we did not have disturbed felons. You had firearms. This is not a case in which there was a mistaken belief of the presence of firearms in shooting. There were, in fact, firearms, and there were, in fact, discharge of firearms. Yes. And then they run away when they are told to freeze. The police say freeze to the people, to the group that they believe discharged the weapon, and they do exactly the opposite. What's a cop supposed to do? Supposed to say, okay, take the gun you just shot off and go off into Culver City, drive off until at leisure? I don't think so. There were three basic facts upon which the defendants in the district court relied. Just stop with the one fact. They have an application. The police observe a shooting, somebody shooting off a gun, and the group that includes the shooting is now told to freeze, and they don't. They get in the car and they drive off. I don't know what else you need. Well, what are they supposed to do at that point? The problem is that the group that ended up shot or dead. What are they supposed to do at that point? Well, they should have identified themselves as police, according to the one survivor. They did. They said police, freeze. But that was disputed. According to the one survivor, Denorvius Pickett, they never said police. According to two eyewitnesses who were associated, were not plaintiffs, who were in fact probably associated with the group that in fact were the aggressors, those two witnesses both testified that the police never identified themselves as police. That in fact one of them never said anything, and that the only thing that Officer Purnell ever said is he said one time, freeze. I think it's also important in comparing this case to Briseau to recognize that the officers here were dressed so as to avoid being identified as police officers. One of the officers had a shaved head, was wearing shorts and a white short sleeve shirt, probably a t-shirt. Shaved head, shorts and a t-shirt. The other officer had a goatee and a beard, had shoulder length or longer hair. So they were just shoppers of the Fox Hills Mall. So these guys that are shoppers, perceived as shoppers of Fox Hill Mall, say freeze. And you guys are so scared of that, they take off. Well, they were... It's a little hard to believe. Well, this whole incident is in part a mystery. I don't think we've really ever gotten to the bottom of what happened here. We only found a gun with five empty casings. Yeah. We found the... But the important thing is that the gun was found in the possession of somebody that nobody ever claimed pointed at the police or shot at anybody. In whose possession was it found? The gun was in Ernest Daz's possession. What happened... What do three of your clients say about Mr. Pickett's possession of the gun? None of them know anything about Mr... All of the three clients who are the estates or the heirs have no idea what happened because their children are dead. The only one that survived was Mr. Pickett. The key evidence is that there were GSR tests performed on everybody. That is, on all of the people in the car, the three dead young men. None of them had GSR. Don't we have to focus on what was apparent to the law enforcement authorities at the time? Precisely. The results of these tests are long later. Precisely. But the tests tell you that Lloyd Brewer, sitting in the back seat, who supposedly, according to the police, fired three or four rounds off and then pointed the gun at the police, never had a gun, never fired a gun because there was no GSR in his hands. And that was corroborated by the one survivor, Mr. Pickett, who said that he, that is, Mr. Pickett, jumped into the back seat of the car, that the police had started to shoot... Or somebody. He really doesn't know who was shooting. They were not... They were the victims of this shooting. They didn't shoot at anybody. Isn't the issue is what was the reasonable perceptions of law enforcement? I agree. Couldn't agree more. And was not there a reasonable perception that they were being fired at? No. Because they said that what happened is that Mr. Pickett was seated upright in the back seat of the car, that Mr. Brewer was seated upright in the back seat of the car, that Mr. Pickett pulled himself forward, bending down so as to give Mr. Brewer an opportunity to point the gun at the officers. Mr. Pickett said that never happened. He jumped into the car. He laid down in the seat. The bullets were flying as he did so, that Lloyd Brewer jumped into the car behind him, immediately jumped out the other side and fell dead on the pavement. So the story about what the police observed was contradicted by the one survivor, and it was contradicted by the available indisputable or undisputed GSR evidence, which the district court declined to consider because he said that it did not prove conclusively that Lloyd Brewer, that neither Lloyd Brewer nor Jason Radden nor Denorious Pickett ever fired a gun. Well, is it disputed at all that Purnell saw a member of your group fire a revolver at another group? Of course it's disputed. It was disputed by Mr. Pickett. There was only one gun. Well, then what do you do with this? Roden, Dabbs and Brewer, your clients, in their complaints say, quote, during the argument, Pickett pulling from his waist a gun and fired one shot at the other group after Denny, meaning Pickett, fired this shot before individuals headed to their vehicles. You've got three clients that say that Pickett fired on the other group. They were wrong. They had no. That allegation was completely. It was the complaint. The defendants denied that in their answer. If the defendants had ever believed that Denorious Pickett had done that, they would have arrested and charged him with something. They never did anything to Pickett. The defendants knew from the beginning. They had to have known from the beginning that that allegation was incorrect. They never claimed that Denorious Pickett had a gun, pointed a gun, fired a gun or anything else. And as soon as as soon as we realized that the defendants had gone back to the initial mistaken allegation in the complaint and pulled that out, which they did in their reply to our opposition to the summary judgment motion, we made a motion to withdraw to strike that allegation because it was obviously incorrect. The clients who were making that allegation had no personal knowledge, had no way of knowing whether that was true. Did Pickett ever have the gun in his pocket? He had the gun in his pocket. He said he gave it to him. He he got it from dabs. When? Before they went back to the incident. Correct. So he had the gun in his pocket. They go back to the incident. This is when there's a shooting. This is this gun that did the shooting. No, it wasn't. There was according. There's no evidence that this gun was ever involved in the shooting. How many empty rounds were in the gun? According to the police, there were five expended cartridges in the gun. But there were any other guns in the car when the police got there? There were no other guns. Isn't it a fair inference that this was the gun that was involved in the shooting? It's not. It is not the inference that one can draw on this record. Mr. Pickett said that he and dad went back to the car. The dabs got the gun, handed it to pick it to pick it, put it in his pocket. He carried it. They never took it out of his pocket until they got back to the car. He threw it under the seat of the car that after the police stopped shooting, the dabs reached down, picked it up and shot himself in the head. That was Pickett's testimony. And that testimony has to be believed at this stage of the proceeding. And especially when one considers the the results of the G.S.R. testing, which show that the only person who had G.S.R. in his hands was dabs. Well, isn't isn't Pickett's declaration contradicted by his statements? Not at all. I mean, he says he saw a brewer and ever sat up beside me, never turned towards the driver's side, never raised his hands or hands, did not have anything in his hands or hands, including a gun. And you've got to assume from that when he says he never had this, that he saw it. But yet later on, when he's asked about this, he said he had his face down. He didn't see anything. How could he have seen all this if he didn't see it? Because he had the gun himself. I mean, the odd thing. In fact, the thing that makes Mr. Pickett's testimony so convincing is that he is the only one in the world, the only person in the world because everybody else is dead who could possibly say that he had the gun. He had the gun in his pocket. He comes forward and he says, and I'm I do not represent Mr. Pickett at this point in time. Understand he's represented by another lawyer who he says he had the gun in his pocket. He said he had the gun in his pocket to get out of his pocket. He said when he jumped into the car, he took it out of his pocket and threw it underneath the seat of the car. And there's no evidence that contradicts that. I mean, it seems perhaps unlikely. Why did he do that if he hadn't been involved in the shooting? Beats me. You know, you've got to create a genuine issue of material fact. Well, it is a genuine issue. Not just an hallucination. Well, but what about the GSR evidence? We have people get sentenced to capital murder on GSR evidence. This court has said that it's extremely persuasive evidence. And here we have a gun, which, if it was fired by anybody, should have left GSR on their hands. And there is none. I understand the way GSR evidence works if you find it. If you find it. I know what that means. Correct. I don't know what its absence means. Well, no. There are lots of sayings that if they leave a trace, that's the trace. I don't know how often, when you shoot a gun, you in fact get this on your fingernails, or whether you can wear a glove. I mean, I don't know. Sure. I mean, it's like fingerprints. If you leave a fingerprint, and they find a fingerprint, they can pretty much tell it's yours. But there's lots of surfaces that you can't leave fingerprints. And so the absence of a print doesn't mean anything. Well, we had an expert who was a firearms expert for LAPD for 30 years, who said that if anybody fired this gun, that it is almost always the case that they would have residue on it. It's a problem. Almost always. Well, almost always is exactly what the district court relied on. You can't prove beyond any possible conceivable doubt, and therefore you lose. I mean, this is summary judgment. People get sentenced to death on this evidence. How many times was the gun said to have been shot in the parking lot? According to the officers, they saw Jesse Brewer, pardon me, not Jesse Brewer, but Lloyd Brewer, fire the gun three or four times in the parking lot. Ernest Dabbs fires a gun one time in the car, and he has gunshot residue on his hands. Brewer had no time to wipe anything off. He's not wearing gloves. He's dead immediately. So where does the gunshot residue go if Lloyd Brewer ever had or fired this gun? It's inconceivable to me that this is not enough evidence. When did he acquire the gun? When did Pickett get the gun? He got the gun after they had initially come to the mall, and apparently there had been some kind of a dust-up, a verbal confrontation in the mall with this other group of young men. Between who? Between the group that Mr. Dabbs, the plaintiff group, and the other group. The evidence suggests that these were two gangs. The evidence would suggest that that's what the police eventually. Maybe that Pickett wasn't a member, but there were two gangs involved, Crips and Bloods. Is that right? That's what the evidence shows. Well, I think that that's what the police eventually concluded, but I don't think that that was obvious from the beginning. So there's a dust-up between two groups. Correct. And Pickett being a member of one of the groups, or with the groups, then goes back to the car. Correct. And one of his friends gives him a gun. Dabbs says, take this. He puts the gun in his pocket. Exactly. And then where did Dabbs and Pickett go now that Pickett is armed? They go back to the shopping center, and they decide to leave, and they all leave. They go back up the staircase and out the door into the parking lot, and they're followed by this other group. The Dabbs, Pickett, Rowden, Brewer group are near their vehicle, and the two officers dressed more like gang members or narcotics dealers than police,  follow both groups up the stairs, and they hear a verbal confrontation between the two groups. And then somebody starts shooting. Somebody starts shooting. The police say that it was Lloyd Brewer who started shooting. Denorvius Pickett says, that's not true. That's not what happened. They started shooting at us. I had the only gun. Denorvius Pickett says, the one survivor, the person who the police never charged with anything, says, I had the only gun we had. So the dust-up turns into a shooting in the middle of a mall. Correct. Exactly. And what happens is that the officers go after the victims. And so you think it was a mistake by the officers. I don't think it was a mistake. You think they delivered the signal now. Surely the shooting was not a mistake. They intentionally shot. I think they may have concluded that they could shoot anybody involved in this confrontation. What really happened is not entirely clear. And that's in part because they chased the wrong group, though. That's right. They did. The other group shot, and they chased the same group. Exactly. And they claim the animus against the group that caused them to chase the victim group. I think they did. They said that these were young black men who were probably involved in a gang, and that, therefore, they were fair game. Was the other group a different ethnic background? They were all black. They were all black. But the other group was closer to the stairwell. So they ran down the stairwell. And they were also stopped. The police thought, maybe mistakenly, they were chasing the shooter gang. Well, whether they thought that or reasonably could have believed that is seriously in dispute. Because they said, that is, the officers testified, that they saw Mr. Brewer shoot the gun. And I think the evidence shows that's impossible. So why are they saying that if it didn't happen? Maybe they were mistaken. They could be mistaken, or they could be covering up what they recognized after the fact to be a wrongful shooting. Really, one of the interesting. Assuming it was a wrongful shooting, it would nevertheless have gone out of mistake. They thought they were pursuing the one group, the shooters, and, in fact, were pursuing the victims, according to your theory. There's no indication that they recognized anybody in this group and decided to go after this group because they hated one of the guys or something. I think what happened. They had to make a decision on the spot as to who were the bad guys and who were the good guys. And they decided to go after the wrong group, according to your theory. That much was. That's conceivable. What else is conceivable? Well, they went after the group that was available. They saw a shooting. They figured it's a gang shooting. Everybody's responsible. The other group ran down the stairs. The actual aggressors, the shooters, the people who three witnesses saw with a gun, three independent witnesses saw with a gun. And one witness said, I wonder why one of these witnesses reported to the police that she heard one of the actual shooters say, I wonder why they didn't want to fight. We better get out of here. We better get the fuck out of here before we have to shoot somebody else. Those are the people that have the gunshot residue. It's heard by the officers. This is something that was heard by a person who was shopping at the center. His name is Jawan. And what did the officers hear this? No. But what I am. And therefore, how does that how does that impact on their conduct? Because the question is, why did they shoot at the group that got shot rather than on the actual shooters? And my suggestion is that one reason is that they jumped to the conclusion that everybody who was involved in this gang shooting was was fair game. And that the only people that they could go after were the people that were away from the staircase. My guys jumped in the car to try to avoid being shot. They were they were available. The police went after them. The other people ran down into the mall. Pardon me. They jumped in the car, but they didn't stop with their hands up. They didn't know that it was police. They didn't know it was police. DeNorvis Pickett said nobody ever said police. And then two independent witnesses said nobody ever said it was police. I think there were other police block the police, according to Mr. One of them is is I would say one is white. One is clearly white. Let me ask the question more directly. Would they have thought that these two guys were part of another group? Hard to tell. I think not because one of them is is is long haired and white anyway. Yeah. But I'm I'm not sure what that really tells us. But I understand that that that according to Mr. Pickett, the shooting never stops. I mean, it's not as though the police come up to the car and say stop or police and start shooting. According to Mr. Pickett, they're being shot as they're jumping in the car. This whole thing about the police coming up and identifying the time. We'll hear from the opposing counsel. Good morning, your honors. David Lawrence for Culver City. Ted Cook. John Cornell and Osama Gabi. One of the last comments that my opposing counsel made was was why did they shoot at the group that got shot? And that's at odds with the evidence, because the evidence is clear that it was Stephen Vaughn who was a member of the Bloods gang, which was the opposing gang that got shot in the arm. And he's counsels offered no explanation other than what version of the events offered by the police officers was, i.e. that that group was shot at by the group composed of Mr. Pickett and the three other individuals. Also, the declaration upon which plaintiffs rely, Mr. Pickett's declaration not only is at odds with the evidence, it's at odds. Could he have been shot by the police? I'm sorry? Could he have been shot by the police? There's been no evidence of that. I saw a suggestion of that in plaintiff's brief, but that's the first time that ever arose. And in fact, the evidence is that. We know the police were there shooting. Correct. We know that for a fact. That's undisputed. Right. Who else was shooting is a little bit of a mystery. We do know that three kids are dead and the only one who has gun residue on his hands is the guy who we know pulled the trigger and shot himself. Correct. What do you make of that? Well, I think of that, having been a prosecutor at one time myself, I know that gunshot residue isn't always there when someone shoots a gun. It's not something that's any... So maybe you can pull off one shot and not get gun residue on your hands. Although I find it difficult. What kind of gun was it? This was a real revolver, a .38 revolver. A revolver had not gotten gun residue on your hands? Your Honor, the fact of the matter is that the evidence is that John Parnell said he thought he had the shooter. The four individuals that went to the car went together. It may well have been Mr. Dabbs that fired those rounds at the other group. But clearly someone in that group, Mr. Pickett or the other three individuals who are now deceased, fired that gun into the group opposite them. Well, you say that's the case, but the other side disputes that. And doesn't Pickett say nobody from our group shot at the other group? Pickett says that in his declaration, but his declaration is also very much at odds with the allegations in his own complaint. One thing that plaintiffs are relying on is this sequence of events. The declaration of Mr. Pickett on summary judgment essentially says that his group came down from the mall. They were walking back to their car. Two of his friends were already in the car and a third one was almost there. And then shots rang out and he jumped into the car. If you go to Mr. Pickett's complaint, it's much more like what the officers say happened. This is at page 116 of the Applebee's excerpts of record and it says, On or about July 25, 2000, Plaintiff was with some friends including Ernest Dabbs, Lloyd Brewer, and Jeffrey Taylor. By the way, they all deny now that Jeffrey Taylor was part of this group at Westfield Shopping Fox Hills Mall shopping at the stores. During their visit to the mall, the boys ran into another group of young men with whom they got into an argument. After a second argument, the boys came to an understanding that they would take the matter outside. As Denny and his friends exited the mall to enter the parking structure, they got into another argument with the first group of young men they argued with earlier in the mall. As the argument escalated, gunshots were fired, at which time Denny and his friends headed for the vehicle. Now, the only difference in those allegations from the other three complaints is Mr. Pickett says gunshots were fired. Conveniently in a passive voice with no subject, so you don't know who fired the shots. Exactly. But I think what's not inconsistent with later on Pickett saying we did not fire the shots. It's not inconsistent with we did not fire the shots, but it is inconsistent with his declaration and the sequence of events. He denies in his declaration that there was a standoff and shots were fired and they ran together to the car. His declaration says that two of the three others with him were already in the car before shots were fired. A third was almost in there and he was on his way to the car. What the complaint shows is a scenario as seen by the officers, which is a group of correctly believed to be Blood Gang members, a group of correctly believed to be Crip members, standing off and one in the group of Crips shooting into the other group and then running to their car. That's what this this scenario fits exactly with that, except for he says gunshots were fired. Well, but why don't you have a genuine issue of material fact? You have disputed facts here. Pickett says X and put the police say Y. And it seems to be at the center of what triggered this whole thing. So it doesn't ordinarily dispute of facts like this necessarily have to go to a trier of fact rather than be resolved on summary judgment. It doesn't take the facts in the light most favorable to the person about to lose. Meaning that's correct. But if the scenario offered is implausible, as the district court said, it does not have to go to the jury. It has to be a genuine issue. And there was so much evidence here supporting the version of events. And by the way, the district court didn't rely upon one person shooting from that group. He went through a series of facts observed by the officers. And the question is, do they have probable cause to believe that a crime involving the infliction or threatened infliction of death or serious physical injury had occurred? And if so, they can use deadly force to stop those people. And clearly they had probable cause. You know what I find suspicious? I find suspicious this idea that the police are looking at a car that's speeding away. And they see a guy bending over. And they're able to sort of pick him off by shooting just that guy. It looks to me more or this other guy says, you know, they see him pointing a gun. And a moving car that's moving away using a handgun, they can pick off just that guy. To me, it sounds like what they were doing is they shot a couple of guys. And then they may have some stories to conform. Oh, well, this guy got shot because we saw him pointing a gun. And this guy got shot because we saw him reaching for the floorboard. There would have to be extraordinarily good shots to pick off two guys like that in a car that's speeding away from them. Well, you know, the sequence of events we explained, you know, one guy is pointing a gun. Then he gets shot and then another guy reaches down as he's reaching down. He gets you know, this may be the stuff of movies, but in real life. It almost is the stuff of movies when you consider the event with Mr. Dabbs. I mean, if you wrote a movie and you had that in the movie, would you believe it? We know what the time interval is. This is this happens in a matter of seconds. And it's not a car speeding away. The record doesn't say the car. They're spinning wheels and flying through the through the parking lot at that point. I mean, the car has started to move and the officers are not that far from the vehicle. It would try to get something in motion. I mean, it's really hard enough to hit a stationary target at 25 feet. You know, you start looking at 50 yards and moving target and you ain't picking nothing off individual. I mean, to me, to me, I mean, much more plausible to think that they were shooting at the car. They hit a couple of the people and then they made up stories to conform as to why they hit those particular guys. That's that's what you know, we know that that's what's true to me. We know the gun is in there. We know that someone in the other group was shot. We don't know that anybody pointed the gun at the police, except that they say so. But that's not necessary to find grant summary. We're taking this one fact at a time, right? That fact strikes me as highly suspicious. Even more suspicious strikes me. Oh, he was bending down. And I, you know, I said, so cars moving in the parking lot and I'm sitting there. I had the presence of mind to figure out, oh, maybe he's reaching for a gun. So he's bending down. So, man, we'll pick him up. I mean, I don't know. I guess to me, all it does is makes the declarant of those statements, the people who say those things sound either lying or fantasizing. According to Mr. Pickett in his own deposition and testimony, he laid down in the car. So this but he's not the one who got killed. He's not the one that got killed. But but what the officers say is that he bent over. And then the person in the rear passenger side is the one that pointed the gun at them. And we know the gun is in the back seat because Mr. Dabbs reaches back and picks it up and shoots himself with it. So I don't think it's nearly as as suspicious as Your Honor thinks. It seems to me that the evidence and by the way, this is a car that has a bench seat. If you accept Mr. Pickett's declaration now that he that he put the gun. There are three people killed, right? Correct. I mean, one one. Yes. The driver. The driver was killed. The driver was killed. The the right rear passenger was killed. And the passenger is the one who was supposedly pointed a gun. Right. And how was the driver killed? He shot himself in the head after all this happened. Well, that's that that stabs. Right. And who is the third one who killed? That is the third one. The driver. The driver was Mr. Rowden. He was killed by the volley of shots. The one in the right rear was Lloyd Brewer. He was killed as well during the volley of shots. Officer Cornell came up to the window. The the passenger in the front seat said, shoot me. He said, we've got help coming. Oh, shoot me. And then what he does is he reaches in the backseat, pulls out the gun, holds it to his head and shoots himself. Now, if the gun were underneath the bench seat, how in the world is Mr. Debs going to be able to get that? The fact is that the gun was in the backseat where Mr. Brewer had left it. And and it's clear that the sequence of events is, I believe, exactly the way the officers say. Is that disputed how that's killed? Is that disputed? No, no, it's undisputed that he killed himself. And Officer Cornell said, oh, my God, he shot himself. Put the gun right behind his right ear and shot himself. So it's a tragic set of set of facts. No question about it. I think it's very clear that shots were fired into the group of blood gang members. One was shot. Officer Cornell may have been mistaken as they're running away as to which one had done it. But they still have probable cause to believe that there's been a crime involving the infliction or threatened infliction of death or serious physical injury. And under this court's case of Ford versus Richardson, deadly force can be used to prevent escape. Was there a good evidence of whether they identified themselves as police? I'm sorry. I thought one of the witnesses said that he did. They did identify themselves as police. But well, Mr. Pickett says he didn't hear it. But simply because you don't hear something doesn't mean it didn't happen. So what evidence is there as to whether they did identify themselves as police? You know, counsel referred to that and I'm not sure who he's referring to. I don't recall a declaration in the evidence affirmatively saying that the police did not identify themselves. But they certainly have every reason to do so. And they have testified that they did. So I don't think I don't think there's a material dispute on that issue. And besides, a warning under Ford and under Tennessee versus Garner, a warning should be given if feasible. We know that these things are happening very quickly. And the district court even acknowledged that even if we assumed a warning was not given, that this use of force would be reasonable under these circumstances that we had in this case. Is there any other issue that Your Honors would like me to address? Okay. Thank you. Thank you very much. It was Mr. Womack who was deposed by defendants. He said to page 12 of the brief that I seen the police say freeze. He fired duck back up, raised back up and looked again and seen the police rubbing his hand through his hair like he didn't mean to do it. He said, I don't like man. I messed up. He is sure he did not hear the police say the police say I'm a police officer. He only heard the word freeze and he heard it only one time. Who is speaking? Who is he? Womack is one of the other group. He says he's interviewed by the police at the time. I thought you said the other group ran in the other direction. That's why the most of them did. Most of them ran down the staircase. Apparently Womack was someplace up in the parking lot, because according to Womack, he saw what happened. And he says that there was no that the police did not identify themselves. One time, one of the police said, freeze. Pardon me? I don't understand. Why is he speaking in the third person? What exactly are you quoting here? I'm quoting Womack's testimony in his deposition that the defendants took. What did he say again? He says, I am, quote, sure, unquote. The police did not say, quote, I'm a police officer, unquote. When you say there's a bunch of keys in there. Oh, what I seen the police say, freeze. This is a direct quote. He that is the police. Did he know there were police at the time? What does he say? He says that he thought they were police. He says he thought they were police. How did he think they were police if they didn't say they were? I think. And now I'm going from my very fallible memory that it was the way they held the gun. Oh, because they saw it on television or something like that. Yeah. I think that's what let me go back to something else as to who started the shooting. Let me just give you the district court's version of this and tell me where you think this is wrong. He's talking about Morgan, Roden and Alexander, and he describes what they say in their complaint is judicial admissions supporting the officers version. Plaintiffs claim that Brewer, Roden and Pickett never fired a gun at anyone in support. They rely on Pickett's declaration. However, in their respective complaints. In their complaints, Morgan, Roden and Alexander all state that, quote, during the argument, Denny Pickett pulled pulling from his waist, a gun and fired one shot at the other group. After Denny fired this shot, the four individuals headed to their vehicles, quote, from the court. This statement constitutes a binding judicial admission and then citing some cases under federal law. Stipulations and admissions in the pleadings are generally binding on the parties at the court. Judicial admissions are formal admissions in the pleading, which have the effect of withdrawing a factual issue. So the court drew on this on these statements by three of your clients. The first one is that Pickett was the one that fired and he says this admission that Pickett fired the gun at the other group corroborates the officer's statements that they heard gunshots coming from the group of Dabbs, Brewer, Roden and Pickett. And it corroborates Purnell's statement that he observed a member of this group pointing a revolver at the other group. What's the matter with that analysis? Well, what's the matter with it is that the defendants did not rely on that. The defendants denied the allegation in the complaint. Well, but he says he says tough luck. That is a judicial admission and it's and it's entitled to wait. Is that is was he wrong there as a matter of law? I think that that would be correct if the defendants had relied on it. But they didn't. They put it in the complaint. Well, that's not relying. We put it in the complaint. We put it in the complaint. The defendants denied it. The officers testified it wasn't true. You mean the lawyers screwed up and put false information in the complaint? Exactly. That's exactly correct. Whose fault is that? It was the lawyer's fault. Well, maybe somebody had a malpractice action. It could be. Could be. But the fact of the matter is that it can't it did not prejudice the defendants. They did not rely on it. They denied it was they they took the position. It was untrue. Was not Pickett that fired at anybody. Pickett never fired at anybody, according to the defendants. Had they had any time thought that Pickett had fired a gun or had anything, any responsibility for this, they would have arrested him. He's the one person who lived. Pickett, I mean, Pickett acknowledged having the gun. Apparently what happened is that my co-counsel at the time. Maybe he didn't. Maybe the gun was fired by the guy who shot himself. It's very hard to believe that that's true. Somebody in the other group got wounded? Somebody in the other group got wounded, but that person never testified, never said who wounded him. And it's as likely as not that he was that he was shot by the police, in my view. There's no evidence as to who shot that person. Let me take it to the next step then, to the qualified immunity analysis. Let's assume we get that far. And as we were discussing earlier, under Tennessee versus Garner, which you're very familiar with. Of course. Why wouldn't this fall into the category of a mistake made by police in the heat of battle? And the law allows police, prevents police from being sued for a mistake made in the heat of battle. And we know there was a gang fight going on here between two groups. Guns, shots fired. So Tennessee versus Garner seems to suggest that under those circumstances, you can shoot fleeing felons who are fleeing from a gang fight involving gunshots in a public place. Why wouldn't that qualify for qualified immunity? I think the big problem is that the justification that the police relied upon for the shooting was the claim that Lloyd Brewer had pointed a gun at them. And that is not true. On this record, one has to, you know, the record shows on summary judgment that was not true. Denorvius Pickett was in a position to know whether that was true or not. And he said it's not true. I had the gun. He didn't have the gun. I thought he said in his deposition he was on the floor and didn't see anything. He said that he jumped into the car. He laid down. He threw the gun forward. That Lloyd Brewer followed him in, did not stop, climbed over him. The guns were blazing. That he just, he came in the one side of the car, which was the driver's side of the car, and immediately jumped out either through the open window or the blasted out window or the open door on the other side of the car. He was never in the car for more than a second. And he staggered out the other side of the car and fell to the pavement dead. And that's true. I mean, Lloyd Brewer was found dead outside the car on the other side of the car. So Mr. Pickett was in a perfect position to know that it could not have happened the way that the officers said it happened. If it didn't happen that way, if the officers, for whatever reason, just started blasting away at this car full of four young men without having identified themselves as police officers, dressed as non-police officers, without seeing anything from this car exposing them to danger, then I don't think we can give them qualified immunity because of the story that they made up. I have a hard time believing that guys in the other group were recognized as police, but your guys didn't. Well, you know, who knows? I mean, they were not being shot at, for one thing. That may make a difference. I mean, if you ask Mr. Pickett today, you know, did you eventually realize that these are police, he might say yes. But at the time, this is going down very fast. They're being shot at. Who else would be shooting at them? It's not the other group. Well, it could have been. It could have been. I mean, they were being shot at. According to Mr. Pickett, they were being shot at. They ran. They ran to their car to avoid being shot at by the other group. And then all of a sudden, they're being shot at by these other people. Guys don't usually commit suicide when they're being shot at by another gang. Well, at that point in time, I think perhaps, I mean, I think at the point in time when Dabbs shot himself, he realized that they were police. I think that's a fair inference. But at the point in time where the police initially opened fire, I don't think anybody really understood that. The time interval is about, what, five seconds? Well, I think, frankly, it could be. Nobody really knows for sure. But I think we're talking about a very, very, very fast series of events here. Look at the discovery question, because what really happened here is buried by former Chief Cook and the investigation. If it's any place to be found, it's buried in the investigation that we never got. We never got our hands on. Thank you. In case you're sorry, you will stand submitted. We're next to argument in.
judges: Kozinski, Trott, Sand